UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMIE ROBINETTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE No. 13-CV-257-FHM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Tammie Robinette, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] Plaintiff, Tammie Robinette's applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Jeffrey S. Wolfe, was held November 14, 2011. By decision dated March 16, 2012, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on March 8, 2013. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

For the reasons discussed below, the Court REVERSES and REMANDS the decision of the Commissioner.

### **Background**

Plaintiff was 48 years old on the alleged date of onset of disability and 50 years old on the date of the denial decision. She has a general equivalency degree and formerly worked as a cashier, cook/dishwasher, store manager, and daycare worker. Plaintiff claims to have been unable to work since March 2, 2010 due to pinched nerves, carpal tunnel syndrome, arthritis, sciatic nerve problem, diabetes, and hypertension. [R. 165].

### **The ALJ's Decision**

The ALJ determined that the Plaintiff's severe impairments include mild to moderate degenerative changes of the lumbar spine, history of status/post-bilateral carpal tunnel

surgery, type II diabetes mellitus, hypertension, sciatica, and muscle spasm of the neck. [R. 13]. The ALJ further determined that Plaintiff has the residual functional capacity to perform light exertional work[2] with limitations of occasional handling of the left hand (affecting gross manipulation of the left-hand only which does not affect the ability to engage in frequent fingering). [R. 14].

Based on the testimony of a vocational expert the ALJ determined that Plaintiff is capable of performing her past relevant work as a cashier. The case was thus decided at step four of the five-step evaluative sequence for determining whether Plaintiff is disabled. See *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to fully develop the record; 2) failed to properly consider the medical source opinions; 3) failed to perform a proper credibility determination; and 4) failed to perform a proper Step Four determination.

## Analysis

### Consideration of Medical Source Information
### and
### Failure to Develop the Record

---

[2] Pursuant to CFR § 404.1567, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

At the conclusion of the administrative hearing and prior to issuing his decision, the ALJ determined additional neurological testing was necessary. A consultative examination was performed by neurologist Michael Karathanos, M.D. Dr. Karathanos found that Plaintiff suffered from bilateral carpal tunnel syndrome, bilateral ulnar neuropathy, chronic cervical strain, chronic lumbosacral strain, and mild diffuse peripheral neuropathy. [R. 351-53]. He completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) form. [R. 354-359]. On the form Dr. Karathanos indicated Plaintiff had the ability to carry up to 10 pounds only occasionally; could sit 2 hours at a time and 6 hours total during a workday; could stand 30 minutes at one time for up to 2 hours during a workday; could walk 30 minutes at one time[3] for up to one hour in a workday; required the use of a cane; could not use her left hand for any purpose; and could only occasionally use her right hand. *Id.*

Following the consultative examination and issuance of Dr. Karathanos' opinion, a nerve conduction study (EMG) was performed by Dr. Ashok Kache, M.D. The EMG study revealed Plaintiff had normal nerve conduction in both upper and lower extremities without evidence of neuropathy or entrapment syndromes. The needle EMG of bilateral upper and lower extremities and corresponding paraspinals showed no evidence of radiculopathy in the cervical and lumbar regions. [R. 349]. Plaintiff requested that the ALJ provide the EMG studies to Dr. Karathanos. [R. 227]. There is no indication in the record that Plaintiff's request was granted. The ALJ rejected Dr. Karathanos' opinion, finding as follows:

---

[3] Dr. Karathanos' form contains some odd and illegible marks, the precise meaning of which is not obvious. The court has portrayed its understanding of what is indicated. Regardless of any misunderstanding, however, it is clear that Dr. Karathanos was of the opinion that Plaintiff was more seriously limited than the ALJ's RFC findings.

4

>Upon examination of the objective EMG testing, I give little weight to [Dr. Karathanos'] opinion as it [is] not consistent with objective EMG testing as performed by Dr. Kache and the medical evidence of record, considered as a whole. It is apparent that Dr. Karasthanos [sic] (for some reason not otherwise explained) did not examine Dr. Kache's EMG testing before rendering his opinion. (See, Exhibit 14F) Dr. Karathanos evidently based his opinion on the assumption and diagnosis of carpal tunnel syndrome, evidently, largely on Ms. Robinette's reports – findings which were not objectively demonstrated on the subsequent EMG or nerve conduction testing.

[R. 21].

Plaintiff makes two arguments regarding the ALJ's treatment of Dr. Karathanos' opinion: (1) the ALJ's failure to have Dr. Karathanos review the EMG results constitutes a failure to fully develop the record; and (2) the ALJ's rejection of Dr. Karathanos' opinion based only on the EMG report was error. The court agrees with both propositions.

The ALJ's conclusion that the entirety of Dr. Karathanos' findings and resulting opinions should be disregarded on the basis of the EMG report is not supported by substantial evidence. The ALJ's conclusion is based on the ALJ's apparent belief that EMG and nerve conduction testing is definitively diagnostic for all types of neuropathy and/or weakness and that those tests necessarily trump or override the consultative neurologist's direct clinical observations of Plaintiff. The record contains no support for such a belief.[4] The ALJ's conclusion, reached on the basis of his own understanding of neuropathy, EMG, and nerve conduction studies is not supported by substantial evidence. On remand, if the ALJ relies on the EMG and nerve conduction test results to reject Dr. Karathanos' opinion,

---

[4] A quick internet search to determine the limits of EMG or nerve conduction studies reveals that small fiber neuropathy and Guillian Barre Syndrome may not show up on these studies. http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2771953/

the ALJ must develop the medical record with further medical opinion addressing those test results.

Further, the court notes that it is a claimant's functional limitations, rather than the existence of a particular diagnosis that determines disability. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.), *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work), *Scull v Apfel*, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). Since the focus of a disability determination is on the functional consequences of a condition rather than the existence of a diagnosis, and the ALJ rejected Dr. Karathanos' opinion because his diagnosis was not supported, the case must be remanded for further consideration of Dr. Karathanos' findings concerning Plaintiff's functional limitations.

In addition, on remand, the weight given to the state agency reviewing experts should be re-evaluated in light of Dr. Karathanos' findings and opinions using the factors outlined in 20 C.F.R. §§ 404.1527, 416.927. The ALJ's decision should contain an explanation for the acceptance of the opinions of non-examining reviewer's opinions over the opinion of an examining neurologist, especially since the reviewers did not have the benefit of the neurologist's clinical findings and opinions.

Plaintiff also argues the ALJ failed to properly evaluate the opinion of nurse practitioner, Robin Enders. Ms. Enders completed an application for a handicapped parking placard for Plaintiff in which Ms. Enders checked the box on the application that stated the applicant "[i]s severely limited in his or her ability to walk due to an arthritic neurological, or orthopedic condition, or complications due to pregnancy." [R. 217]. The ALJ did not mention the application in his decision. He did, however, note that a copy of the handicap parking sticker was in the record though there was no indication as to whom the sticker belonged. [R. 328]. According to Plaintiff, the handicapped parking application constitutes an opinion that the ALJ was required to consider and evaluate in accordance with Social Security Ruling 06-03p, 2006 WL 2329939. The court finds that the checking of a box on the application, standing alone, does not qualify as a medical opinion that the ALJ was required to discuss. The decision demonstrates that the ALJ considered Ms. Enders's records. Further, before Ms. Enders completed the application for the handicapped placard, the ALJ noted that Plaintiff's treating physician's assistant Marcus D. Sizemore refused to write a prescription for a cane or sign the application for a handicapped parking placard. [R. 235]. The ALJ noted that Mr. Sizemore felt that it would be counterproductive to Plaintiff as he encouraged her to stretch and walk as much as possible. [R. 19]. To the extent the handicapped parking application can be considered a medical opinion, the ALJ adequately considered it.

Step Four Determination

The hypothetical question posed to the vocational expert included limitation to light exertional work and also included limitation of gross manipulation in the left hand which does not include any limitation in fingering. [R. 67]. The RFC in the decision was more limited than the hypothetical posed to the vocational expert. The RFC contained the limitation of "<u>occasional</u> handling of the left hand (affecting gross manipulation of the left-hand only which does not affect the ability to engage in frequent fingering)." [R. 14]. (emphasis supplied). Since the vocational expert was not asked to consider the effect of the more specific limitation contained in the RFC of occasional handling of the left hand, the hypothetical question did not relate with precision all of Plaintiff's limitations. Accordingly, the vocational expert's testimony cannot constitute substantial evidence to support the Commissioner's decision. *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).

There is the further problem that the ALJ did not perform the analysis outlined in *Social Security Ruling* (SSR) 82-62, 1982 WL 31386. At step four of the sequential evaluation process, an ALJ is required to make specific findings in three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations," which is the RFC finding. *Id*. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." *Id.* at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* These findings are to be made on the record by the ALJ. *Id.* at 1025; *see also*, SSR 82-62, 1982 WL

31386, at *4 ("decision must contain ... specific findings of fact" regarding each of the three phases). It is not appropriate for an ALJ to make RFC findings and then to delegate the remaining phases to the vocational expert. In such cases, the remainder of the step four analysis takes place in the vocational expert's head and there is nothing for the court to review. *Winfrey*, 95 F.3d at 1025. In addition, SSR 82-62 instructs that the rationale for a disability decision must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion. 1982 WL 31386 at * 4.

The ALJ's decision does not contain specific findings of fact concerning Plaintiff's past relevant work. There is no exploration of the handling requirements of the cashier job. This information is not contained in the vocational expert's testimony. The vocational expert did not supply Dictionary of Occupational Titles (DOT) identification numbers for the light cashier job so it might be argued that the information was even indirectly provided and considered.[5] The only thing the vocational expert said of Plaintiff's past work as a cashier is that the work was light with an SVP of 3. [R. 66]. This information is not sufficient to satisfy step four in light of Plaintiff's handling limitations.

### Credibility Determination

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005) (internal quotation marks omitted). But

---

[5] Plaintiff represents that the DOT contains two light cashier jobs with an SVP of 3. [Dkt. 20, p. 13]. Those jobs clearly exceed the ALJ's RFC finding as they require either constant or frequent handling. DOT 211.462-014, 211.462-018.

"findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Id. (brackets and internal quotation marks omitted).  The court finds that the ALJ performed an adequate credibility finding.

## Conclusion

For the reasons expressed, the court holds that the case must be REVERSED and REMANDED for further proceedings.

SO ORDERED this 28th day of March, 2014.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE